UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO FOSSELMAN, JR.,<br><br>Plaintiff,<br><br>v.<br><br>HIDALGO, et al.,<br><br>Defendants.<br>_____/ | CASE NO.   1:11-CV-00575-AWI-MJS (PC)<br><br>ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND<br><br>(ECF NO. 1)<br><br>AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

**SCREENING ORDER**

**I.    PROCEDURAL HISTORY**

On April 8, 2011, Plaintiff Lorenzo Fosselman Jr., a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.)

Plaintiff's Complaint is now before the Court for screening.

///////

-1-

## II. **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal ... fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393–94 (1989).

## III. **SUMMARY OF COMPLAINT**

Plaintiff is incarcerated at the California Department of Corrections and Rehabilitation ("CDC-R"), Centinela State Prison, ("CEN"). (Compl. p. 2, ECF No. 1.) Plaintiff complains that Defendants discriminated against him based on his race, retaliated against him for filing civil rights litigation, denied him access to the courts by limiting his access to the prison library and losing a box of his legal documents and materials, so that

his habeas appeal in Fosselman v. Evans[1] and his civil rights complaint in Fosselman v. Gibb[2] were both dismissed (Compl. at 6.)

Plaintiff names the following Defendants, in their respective individual and official capacities: (1) Hildalgo, correctional sergeant at Wasco State Prison ("WSP"), (2) Berry, correctional captain at WSP, (3) Ortega, correctional counselor at WSP, (4) Olsen, correctional senior librarian at Kern Valley State Prison ("KVSP"), (5) Burrell, correctional librarian at KVSP, (6) Does 1-2, correctional officers at WSP, (7) Does 3-4, correctional transport officers, (8) Doe 5, correctional officer, rank unknown. (Id. at 2-3.)

Plaintiff seeks declaratory relief, $5,000 in compensatory damages from each Defendant on each cause of action, $250,000 in punitive damages against each Defendant, and costs. (Id. at 9.)

In December of 2008, Plaintiff was transported from KVSP to Solano State Prison ("SSP"), to attend a settlement conference in Gibbs, taking with him a box of legal documents (Id. at 3.)

While at SSP he received by mail the judgment denying his petition in Evans (Id. at 3-4) and setting an appeal deadline of January 4, 2009. (Id. at 4.)

Following the settlement conference, on December 22, 2008, he was bused back to KVSP with his box of legal documents and the Evans judgment. (Id. at 4.)

During a bus layover at WSP on the way back to KVSP, Defendants Hildago, Berry and Ortega intentionally lost or destroyed his box of legal documents, including evidence

---

[1] Fosselman v. Evans, 1:07-cv-00812-JLO-GSA.

[2] Fosselman v. Gibbs et al., 4:06-cv-00375-PJH.

1  in his Gibbs litigation and the Evans judgment. (Id. at 4-6.)

2  Upon arrival back at KVSP on December 24, 2008, Plaintiff was placed in administrative segregation in retaliation for the Gibbs litigation. (Id. at 4.)

His appeal in Evans was untimely, (Id. at 4), and summary judgment was entered against him in Gibbs, (Id. at 5-6), because, he claims, of the loss of his documents, the conditions in administrative segregation, and Defendants "hinder[ing] his ability to timely file motions, objections, extensions, etc. ... [and preventing] discovery or present[ation of] evidence in opposition." (Id. at 5-6.)

Additionally, he complains that Defendants Olsen, Burrell, and Doe 1, denied him access to the library at KVSP during the period August through September 2010, and otherwise restricted his access to the library to two hours/week, due to "a modified lockdown program which, only affected prisoners of Afrikan decent ...." (Id. at 5.) This occurred "at crucial times; in litigation [seeking review of the adverse judgments in Evans and Gibbs] which, has caused many problems with the court, i.e. ... untimely filings resulting in dismissal of state court petition for review to the California Supreme Court, ... [he was also] forced to file for continuances, causing delays and, dismissals." (Id.)

## IV.   ANALYSIS

### A.   Pleading Requirements Generally

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed.R.Civ.P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949–50.

## B. Personal Participation and Doe Defendants

Under Section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each Defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948–49.

Plaintiff fails to allege any facts personally linking the Doe Defendants to the alleged rights violations. There is no evidence that these Defendants personally participated in the events alleged in Plaintiff's Complaint. They cannot be held liable based solely upon a supervisory position. Plaintiff cannot proceed against these Defendants unless he truthfully

alleges how each *personally* violated, or knowingly directed a violation of his constitutional rights.

Moreover, "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). "It is permissible to use Doe defendant designations in a complaint to refer to defendants whose names are unknown to plaintiff. Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names." Robinett v. Correctional Training Facility, 2010 WL 2867696, *4 (N.D. Cal. July 20, 2010).

Plaintiff is advised that Doe Defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute the Defendants' actual names. The burden remains on Plaintiff to promptly discover the full names of Doe Defendants. Id.

**C.     Denial of Access to Courts**

Plaintiff alleges that Defendants Hildalgo, Berry, and Ortega intentionally lost or destroyed his box of legal documents and materials, and Defendants Olsen, Burrell, and Doe 1 denied and otherwise limited his access to the prison library during program lockdown, causing adverse judgments in Evans and Gibbs.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Silva v. Di Vittorio, 658 F.3ed 1090, 1101 (9th Cir. 2011). The right is limited to the filing of direct criminal appeals, habeas petition, and civil rights actions. Lewis, 518 U.S. 343 at 354. Claims for denial of access to the courts may arise

from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim), or the loss of a meritorious suit that "cannot now be tried" (backward-looking access claim). Christopher v. Harbury, 536 U.S. 403, 412-415 (2002). A plaintiff must allege an actual injury by being shut out of court. Lewis, 518 U.S. 343 at 351. "Actual injury" may be defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." Id. at 348. "'[M]eaningful access to the courts is the touchstone,' [and] the inmate therefore must ... demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. at 351. The notion that "prison authorities must also enable the prisoner to ... litigate effectively once in court" has been disclaimed. Lewis, 518 U.S. 343. "The right of access to the courts does not permit recovery for careless or negligent acts. Rather, the evidence must reveal some active misuse of power." Funches. V Ebbert, 638 F.Supp.2d 1014, 1019 (S.D. Ill. June 16, 2009), citing Daniels v. Williams, 474 U.S. 327, 330 (1986).

When a prisoner asserts a forward-looking access claim, the non-frivolous "underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Christopher, 536 U.S. 403 at 416. The plaintiff must describe this "predicate claim ... well enough to apply the 'non-frivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Id. The complaint should "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." Id. at 417-418. When a prisoner asserts that he was denied access to the courts and seeks

a remedy for a lost opportunity to present a legal claim, he must show: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir.2007) (citing Christopher, 536 U.S. at 413-414, overruled on other grounds, Hust v. Phillips, 555 U.S.1150 (2009)).

The facts here demonstrate that Plaintiff had sufficiently meaningful access to the court in both Evans and Gibbs to properly pursue those cases and that lack of success in those cases is attributable to ineffective litigation.[3] "A claim for denial of access may be brought where (1) systemic official action frustrates a plaintiff in preparing and filing suits ... or (2) official action precludes a claim resulting in the loss ... of a meritorious case or the loss of the opportunity to bring suit." Delaney v. District of Columbia, 659 F. Supp.2d 185, 196 (D. D. C. October 06, 2009) (citing Christopher, 536 U.S. at 412-414). See Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995) (The constitutional right of access to the courts requires a state to provide a law library or legal assistance only through the pleading stage of a habeas or civil rights action).

The record in Gibbs shows that Plaintiff successfully filed necessary pleadings and was provided copies of the allegedly lost/destroyed documents two months before he filed his opposition to summary judgment and six months before the court ruled on the summary judgment motion. (Gibbs, ECF. Nos. 91, 97, 98, 117.) His motion for additional discovery was denied on the merits. (Gibbs, ECF No. 102.) The court granted summary judgment on the merits. (Gibbs, ECF No. 103, 104.) His motion for reconsideration of

---

[3] The Court takes notice of the Docket Report in Fosselman v. Evans, U.S.D.C. E.D. Cal. Case No. 1:07-cv-00812-JLO-GSA., and the Docket Report in Fosselman v. Gibbs et al., U.S.D.C. N. D. Cal. Case No. 4:06-cv-00375-PJH.

summary judgment was denied on the merits. (Gibbs, ECF No. 117.) His appeal to the Ninth Circuit Court of Appeals is still pending final disposition.[4] (Gibbs, ECF No. 125.) Defendant's advocacy and the continuing pendency of that case is inconsistent with his claim that his right to access to the court was constitutionally interfered with in that case. See Delaney, 659 F. Supp.2d at 196 (no interference with inmate's First Amendment right of access to courts, where inmate, alleging refusal of corrections officials and employees to assist with filing motions, was subject to ongoing court order and proceeding).

The record in Evans shows that Plaintiff filed objections to the Findings and Recommendations denying his petition, (Evans, ECF No. 31), prior to the December 3, 2008 judgment dismissing the petition, (Evans, ECF. No. 31, 32.) He received notice of the judgment of dismissal within 21 days of its December 3, 2008 entry. (Evans, ECF No. 44.) His notice of appeal was due within 30 days after entry.[5] He filed his notice of appeal late, on January 12, 2009, (Evans, ECF No. 34-35), and the appeal was denied as untimely. (Evans, ECF No. 37.) His subsequent motions for reconsideration were denied on the merits. (Evans, ECF Nos. 38, 44.) There is nothing in the facts pled which would enable the Court to attribute Plaintiff's delay in filing his notice of appeal or his motions for relief to any hindrance or frustration by Defendants.

Even if the contrary were true, there is no suggestion that any Defendant mis-used his or her power and authority by ordering and implementing a program lock-down. Prison staff may, in some circumstances, impinge on constitutional rights in pursuit of reasonable

---

[4] Fosselman v. Gibbs, et al., U.S. Court of Appeals for the Ninth Circuit Case No. 11-15682.

[5] See 28 U.S.C. § 2107.

penological purposes. See Turner v. Safley, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interest."); see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) ("The State may not burden [prisoners' limited First Amendment right of access to courts] with practices that are not reasonably related to legitimate penological objectives, nor may it act with intent to chill that First Amendment right.") Plaintiff has presented no evidence demonstrating why the program lock-down was instituted, or that it was other than reasonably related to legitimate penological objectives. See Coleman v. Governor of Michigan, 413 Fed. Appx. 866, 874-75 (6th Cir. 2011) (state prisoner subject to administrative segregation was not deprived of his right of access to the courts by the failure of corrections officials to allow prisoner the opportunity to use the typing room for more than two hours a day, even though prison policy generally permitted prisoners to use the typing room for longer periods). The evidence here does not suggest that Defendants actively misused authority in order to regulate Plaintiff's library access.

Accordingly, the Court concludes that the evidence effective refutes Plaintiff's claims that Defendants frustrated his legal claims in either the Gibbs action or the Evans action by denying him access to courts. Consequently, the court concludes that amending this claim would be futile. Leave to amend will not be given.

**D.     Retaliation**

Plaintiff claims that Defendants retaliated against him for filing the Gibbs action by denying him access to the courts, limiting access to the prison library, intentionally losing or destroying his box of his legal documents and the Evans judgment, and by placing him in administrative segregation.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Silva v. DiVittorio, 685 F.3d 1090, 1104 (9th Cir. 2011).

Plaintiff complains of retaliatory adverse actions, which, taken as true on screening, show harm that is more than de minimis.[6] Plaintiff has satisfied the first element of his retaliation claim.

The second and third elements of a prisoner retaliation claim focus on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements). Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989); see Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); see also Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th Cir. 1985) (retaliatory

---

[6] See Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (De minimis harm is not sufficient to show "adverse action").

reassignment out of vocational class and transfer to a different prison). Pursuing a civil rights legal action is also protected under the First Amendment. Rizzo, 778 F.2d at 532 (9th Cir. 1985).

There is no evidence demonstrating that the alleged adverse actions were in any way related to Plaintiff's pursuit of his civil rights action. His belief, however sincere, that Defendants' alleged adverse actions were retaliatory is based on nothing more than conclusion and speculation. Plaintiff has not satisfied the second and third elements.

With respect to the fourth element, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity ...." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568–69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300)). It does not appear that Plaintiff's First Amendment rights were chilled. However, Plaintiff has satisfied the fourth prong because Defendants' alleged adverse actions would chill a person of ordinary firmness from future First Amendment activities.

With respect to the fifth prong, a prisoner must affirmatively allege that " 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. This is not a high burden. See Id. (Prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry). Plaintiff's allegation, taken as true for purposes of screening, that Defendants intentionally lost or destroyed his legal documents is sufficient to demonstrate an absence of legitimate penological purpose. Plaintiff has satisfied the fifth

element of a retaliation claim.

Plaintiff has not alleged sufficient facts to satisfy all five elements of his retaliation claim.

The Court will allow leave to amend. If Plaintiff chooses to amend, he must set forth sufficient facts showing all five of the above noted elements attributable to each of the Defendants.

**E.    Property Deprivation**

The Due Process Clause protects prisoners from being deprived of property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982)),[7] neither negligent nor unauthorized intentional deprivations of property by a governmental employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

Plaintiff alleges an unauthorized intentional property deprivation.[8] He has an adequate

---

[7] An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). Plaintiff has not alleged, and the facts do not demonstrate, an authorized deprivation.

[8] The California Department of Corrections and Rehabilitation concedes that Plaintiff's box of legal documents went missing at WSP, and offered him $50 in compensation, which Plaintiff refused. (Compl. at 11.)

post-deprivation remedy under California law and therefore, his attempt to pursue a claim under federal law for the loss of his property fails as a matter of law. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir.1994) 31 F.3d at 816-17 (citing Cal. Gov't Code §§810-895).

The Court will not grant leave to amend this claim, such would be futile, for the reasons above.

**F.    Equal Protection**

Plaintiff claims his equal protection rights were violated by a program lock-down which "only affected prisoners of Afrikan de[s]cent." (Compl. at 5.) The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

"Racial discrimination in prisons and jails is unconstitutional under the Fourteenth Amendment, except for '"the necessities of prison security and discipline."' Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (citing Cruz v. Beto, 405 U.S. 319, 321 (1972) (quoting Lee v. Washington, 390 U.S. 333, 334 (1968). "In the prison context, however, even fundamental rights such as the right to equal protection are judged by a standard of reasonableness, specifically whether the actions of prison officials are "reasonably related to legitimate

penological interests." Walker, 370 F.3d at 974 (citing Turner v. Safley, 482 U.S. 78, 89 (1987).

Although the Equal Protection Clause ensures similarly situated persons are treated alike, it does not ensure absolute equality. Bruce v. Yist, 351 F.3d 1283, 1288 (9th Cir. 2003) (citing U.S. v. Devlin, 13 F.3d 1361, 1363 (9th Cir.1994)) (citing Ross v. Moffitt, 417 U.S. 600, 609, 612 (1974)).

Plaintiff does not allege facts demonstrating that the program lock-down was the result of Defendants intentional discrimination against him, as a prisoner of Afrikan de[s]cent, or that he is being intentionally treated differently than other similarly situated inmates with no rational and legitimate state purpose for such different treatment. He does not identify what program he is on, the program affected by the lock-down, or allege facts showing the lock-down was racially motivated.

The Complaint indicates that Plaintiff is "classified as a crip ... [and] subject to lockdowns during scheduled [library] time," as a security measure. (Compl. at Appx. 3, p. 3.)

"Gang membership is not a suspect class [and] prisoners do not have a right to not be locked down." Allen v. Hubbard, 2011 WL 6202910 at *4 (C.D.Cal. October 12, 2011) (see Serrano, 345 F.3d at 1078) ("[a]dministrative segregation in and of itself does not implicate a protected liberty interest.") In order for prison officials to lawfully place crips on lockdown, they need only have a "rational basis." Id. (See Rodriguez v. Cook, 169 F.3d 1176, 1180 (9th Cir.1999) (citing Harris v. McRae, 448 U.S. 297, 322 (1980)). It is unclear from the Complaint why the program lockdown was imposed, whether the program lock-down was a gang security measure, and if so whether there may have been a rational basis for such.

Therefore, Plaintiff fails to state a claim for relief for violation of his rights to equal

protection.

The Court will allow leave to amend. If Plaintiff chooses to amend, he must set forth sufficient facts showing the above noted elements attributable to each of the Defendants.

## V.  CONCLUSION AND ORDER

Plaintiff's Complaint does not state a claim for relief under Section 1983. The Court will grant Plaintiff an opportunity to file an amended complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948–49. Plaintiff must set forth "sufficient factual matter ... to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555.) Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended

complaint should be clearly and boldly titled "First Amended Complaint" refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed.R.Civ.P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level ...." Twombly, 550 U.S. at 555.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his Complaint, filed April 8, 2011;

2. Plaintiff's Complaint is dismissed for failure to state a claim upon which relief may be granted;

3. Plaintiff shall file an amended complaint within thirty (30) days from service of this order; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action shall be dismissed, with prejudice, for failure to state a claim and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Di Vittorio 658 F.3d 1090 (9th Cir. 2011).

IT IS SO ORDERED.

Dated:   February 14, 2012        /s/ *Michael J. Seng*
ci4d6                   UNITED STATES MAGISTRATE JUDGE