# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO FOSSELMAN, JR., | Case No.  1:11-cv-00575-AWI-MJS (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATION TO DISMISS ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM** |
| v. | |
| HIDALGO, et al., | **(ECF No. 10)** |
| Defendants. | **FOURTEEN DAY OBJECTION DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Before the Court for screening is Plaintiff's First Amended Complaint.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or

1   any portion thereof, that may have been paid, the court shall dismiss the case at any

2   time if the court determines that . . . the action or appeal . . . fails to state a claim upon

3   which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

4   **II.    PLEADING STANDARD**

5        Section 1983 "provides a cause of action for the deprivation of any rights,

6   privileges, or immunities secured by the Constitution and laws of the United States."

7   Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983.

8   Section 1983 is not itself a source of substantive rights, but merely provides a method

9   for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386,

10  393-94 (1989).

11       To state a claim under § 1983, a plaintiff must allege two essential elements: (1)

12  that a right secured by the Constitution or laws of the United States was violated and (2)

13  that the alleged violation was committed by a person acting under the color of state law.

14  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243,

15  1245 (9th Cir. 1987).

16       A complaint must contain "a short and plain statement of the claim showing that

17  the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations

18  are not required, but "[t]hreadbare recitals of the elements of a cause of action,

19  supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.

20  662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

21  Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is

22  plausible on its face." Id. Facial plausibility demands more than the mere possibility that

23  a defendant committed misconduct and, while factual allegations are accepted as true,

24  legal conclusions are not. Id., at 667-68.

25  **III.   PLAINTIFF'S ALLEGATIONS**

26       Plaintiff claims that while he was incarcerated at Wasco State Prison ("WSP")

27  and Kern Valley State Prison ("KVSP"), he was retaliated against, deprived of legal

28  property and law library access, and denied access to courts in violation of the First

1  Amendment to the U.S. Constitution and state law. He seeks declaratory relief and
2  monetary damages.
3       The Defendants are (1) Hildalgo, WSP Sergeant, (2) Berry, WSP Captain, (3)
4  Ortega, WSP Correctional Counselor, (4) Olsen, KVSP Librarian, (5) Burrell, KVSP
5  Librarian, (6) Does 1-5, California Department of Corrections and Rehabilitation
6  ("CDCR") correctional officers.
7       More specifically, Plaintiff alleges that:
8       During a layover enroute to KVSP, prison guards placed him in segregated
9  housing after learning he was involved in civil rights litigation. Defendants Hildalgo,
10  Berry, Ortega and Does 1-5 negligently and/or intentionally lost, destroyed or
11  confiscated a box of legal documents Plaintiff had with him.
12       Upon arriving at KVSP, Plaintiff was housed in AdSeg. He was told the
13  placement was due to overcrowding, but it was not. He did not receive his other legal
14  property (stored at KVSP) for a week. KVSP librarians, Defendants Olsen, Burrell and
15  Does 1 denied him full physical access to the law library during race-based lockdowns.
16       Defendants' actions prevented Plaintiff from accessing the courts in two then
17  pending cases, (1) a habeas petition, <u>Fosselman v. Evans</u>, E.D. Cal. Case No. 1:7-cv-
18  812-LJO-GSA (appeal from denial of petition denied by the Ninth Circuit as untimely on
19  April 26, 2010), and (2) a prisoner civil rights action, <u>Fosselman v. Gibbs, et al.</u>, N.D.
20  Cal. Case No. 1:06-cv-0375 PJH (PC) (dismissed March 18, 2010 following grant of
21  Defendants' motion for summary judgment).
22  IV.   **DISCUSSION**
23       A.    **Access to Courts**
24       Inmates have a fundamental right of access to the courts, for habeas and civil
25  rights actions. <u>Lewis v. Casey</u>, 518 U.S. 343, 346-54 (1996). An inmate claiming denial
26  of access to courts must show: 1) actual injury from the loss of a nonfrivolous or
27  arguable underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy
28  that may be awarded as recompense but that is not otherwise available in a future suit.

3

1    See Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). The complaint should state

2    the underlying claim in accordance with Federal Rule of Civil Procedure 8(a). Id., at

3    417-18.

4           Review of Court records reveals that Plaintiff had meaningful access to the court

5    in both Evans and Gibbs and that lack of success in those cases was not caused by

6    Defendants.[1] In Evans Plaintiff filed objections to the Findings and Recommendations

7    denying his petition (Evans, ECF No. 31) prior to the December 3, 2008 entry of

8    judgment dismissing the petition. (Evans, ECF. Nos. 31, 32.) Plaintiff received notice of

9    the judgment of dismissal "some two weeks later" or "after December 12, 2008". (Evans,

10   ECF No. 44, at 2:15-16.) His notice of appeal was due within 30 days of entry. Fed. R.

11   App. 4(a). Nevertheless, he filed his notice of appeal late, on January 12, 2009, (Evans,

12   ECF Nos. 34-35), and it was denied as untimely. (Evans, ECF No. 37.) His subsequent

13   motions for reconsideration were denied on the merits. (Evans, ECF Nos. 38, 44.) The

14   facts pled do not show Plaintiff's delay in filing his notice of appeal and his lack of

15   success on motions for relief were due to any hindrance or frustration by Defendants.

16   See Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991), citing Parratt v. Taylor,

17   451 U.S. 527, 535 (1981) (plaintiff must show defendant proximately (foreseeably)

18   caused the alleged violation). Additionally, the district court refused to issue a certificate

19   of appealability in Evans (Evans, ECF No. 32) because it could not characterize the

20   appeal as non-frivolous and arguable.

21          The record in Gibbs shows that Plaintiff successfully filed necessary pleadings.

22   See Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995) (the constitutional right of

23   access to the courts requires a state to provide a law library or legal assistance only

24   through the pleading stage). Although Plaintiff claims documents necessary to this case

25

26   [1] The Court takes notice of the Docket Report in Fosselman v. Evans, U.S.D.C. E.D. Cal. Case
     No. 1:07-cv-00812-JLO-GSA., and the Docket Report in Fosselman v. Gibbs et al., U.S.D.C. N. D. Cal.
27   Case No. 4:06-cv-00375-PJH. See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971
     F.2d 244, 248 (9th Cir. 1992) (court may take judicial notice of proceedings in other courts); Barron v.
28   Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir.
     1986) (court may take judicial notice of court records).

1   were taken from him, he was provided copies of the allegedly missing documents two

2   months before he filed his opposition to summary judgment and six months before the

3   court ruled on the summary judgment motion. (Gibbs, ECF. Nos. 91, 97, 98, 117.) His

4   motion for additional (Rule 56) discovery was denied on the merits. (Gibbs, ECF No.

5   102.) The court granted Defendants' motion for summary judgment on the merits.

6   (Gibbs, ECF No. 103, 104.) His motion for reconsideration of summary judgment was

7   denied on the merits. (Gibbs, ECF No. 117.) The grant of summary judgment was

8   affirmed on appeal to the Ninth Circuit Court of Appeals.[2]

9        Plaintiff's advocacy prior to entry of trial court judgment is inconsistent with his

10  claim that his right to access to the court was constitutionally interfered with. See

11  McCree v. Grisson, 657 F.3d 623, 624 (7th Cir. 2011) (district court properly dismissed

12  access to court claim without leave to amend at screening where judicial notice of the

13  record in the action in which meaningful access allegedly was denied belies such

14  contention).   Plaintiff does not show Defendants frustrated his legal claims in either the

15  Gibbs action or the Evans action by denying him access to courts. Nor does he identify

16  any other action in which he suffered actual injury from Defendants' denying him access

17  to court.

18       Plaintiff's access to courts claim fails.

19       **B.   Retaliation**

20       "Within the prison context, a viable claim of First Amendment retaliation entails

21  five basic elements: (1) an assertion that a state actor took some adverse action against

22  an inmate (2) because of (3) that inmate's protected conduct, and that such action (4)

23  chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

24  reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559,

25  567-68 (9th Cir. 2005).

26       Plaintiff's contention Defendants retaliated for his filing of Gibbs is not factually

27  _____

28  [2] Fosselman v. Gibbs, et al., U.S. Court of Appeals for the Ninth Circuit Case No. 11-15682. (Gibbs, ECF Nos. 23, 24.)

1   supported, directly or circumstantially. <u>Gibbs</u> was filed almost three years prior to the

2   events in issue; arose at a different facility (Salinas Valley State Prison); and did not

3   involve any of the Defendants in this action. Plaintiff does not explain how Defendants'

4   were aware of Plaintiff's filing of <u>Gibbs</u> or how they might have been motivated to

5   retaliate against him because of it. The protected conduct must be a "substantial or

6   motivating factor behind the [Defendants'] conduct." <u>Brodheim v. Cry</u>, 584 F.3d 1262,

7   1271 (9th Cir. 2009), <u>quoting</u> <u>Sorrano's</u> <u>Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314

8   (9th Cir. 1989). Plaintiff falls short of making this showing.

9        Even if Plaintiff had shown Defendants were motivated to retaliate for his

10   protected conduct, he does not offer any basis to believe his segregated housing and

11   law library access schedule was other than pursuant to and in furtherance of standard

12   institutional process and procedures.

13       The allegations are not sufficient to support a retaliation claim.

14   **C.    <u>Equal Protection</u>**

15       The Equal Protection Clause requires that persons who are similarly situated be

16   treated alike. <u>City of Cleburne, Tex. v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439

17   (1985). An equal protection claim may be established by showing that the defendant

18   intentionally discriminated against the plaintiff based on the plaintiff's membership in a

19   protected class, <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003), <u>Lee v. City of</u>

20   <u>Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals

21   were intentionally treated differently without a rational relationship to a legitimate state

22   purpose. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>see also</u> <u>Lazy Y</u>

23   <u>Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 592 (9th Cir. 2008); <u>North Pacifica LLC v. City of</u>

24   <u>Pacifica</u>, 526 F.3d 478, 486 (9th Cir. 2008).

25       "In the prison context, however, even fundamental rights such as the right to

26   equal protection are judged by a standard of reasonableness, specifically whether the

27   actions of prison officials are "reasonably related to legitimate penological interests."

28   <u>Walker v. Gomez</u>, 370 F.3d 969, 974 (9th Cir. 2004), <u>citing</u> <u>Turner v. Safley</u>, 482 U.S.

78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interest.").

### 1.   Race Based Discrimination

Plaintiff claims his access to the law library and the courts was impeded by a policy of race based lockdowns. However, he does not argue, much less demonstrate, that the program lock-down was motivated by discrimination against him because of his race instead of for institutional safety and security purposes. See Coleman v. Governor of Michigan, 413 Fed.Appx. 866, 874-75 (6th Cir. 2011) (state prisoner subject to administrative segregation was not deprived of his right of access to the courts by the failure of corrections officials to allow prisoner the opportunity to use the typing room for more than two hours a day, even though prison policy generally permitted prisoners to use the typing room for longer periods). He does not identify what program he is on, why and how his program was affected by lock-downs, and the basis upon which he believes lock-downs were intended as racial discrimination.

The First Amended Complaint indicates that Plaintiff is "classified as a crip . . . [and] subject to lockdowns during scheduled [library] time," as a security measure. (First Am. Compl., ECF No. 10, at 38.) Plaintiff was advised in the previous screening order that "[g]ang membership is not a suspect class [and] prisoners do not have a right to not be locked down." Allen v. Hubbard, 2011 WL 6202910 at *4 (C.D. Cal. October 12, 2011) see Serrano, 345 F.3d at 1078) ("[a]dministrative segregation in and of itself does not implicate a protected liberty interest."). In order for prison officials to lawfully place gang members on lockdown, they need only have a "rational basis." Id.; see also Rodriguez v. Cook, 169 F.3d 1176, 1180 (9th Cir. 1999), citing Harris v. McRae, 448 U.S. 297, 322 (1980).

### 2.   Disparate Impact Discrimination

The alleged lockdown program applied equally to all races and did not treat any race, or an inmate of any race, differently from another race or inmate. Nothing suggests a denial of equal protection based on intentionally dis-similar treatment of

7

1    similarly situated inmates. See Washington v. Davis, 426 U.S. 229, 239-40 (1976) (to

2    establish a violation of the Equal Protection Clause, the prisoner must present evidence

3    of discriminatory intent).

4         In sum, Plaintiff has not shown he was the victim of racially motivated lockdowns.

5         Even if he had, he does not link any named Defendant to the lockdowns, nor

6    does he allege facts demonstrating or even suggesting lockdowns were imposed for

7    other than safety and security purposes.

8         Plaintiff allegations do not show denial of equal protection.

9         **D.    Property Deprivation**

10        The Due Process Clause protects prisoners from being deprived of property

11   without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners

12   have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730

13   (9th Cir. 1974). However, while an authorized, intentional deprivation of property is

14   actionable under the Due Process Clause, Hudson v. Palmer, 468 U.S. 517, 532, n.13

15   (1984), citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982),[3] neither

16   negligent nor unauthorized intentional deprivations of property by a governmental

17   employee "constitute a violation of the procedural requirements of the Due Process

18   Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the

19   loss is available". Hudson, 468 U.S. at 533.

20        Plaintiff alleges an unauthorized intentional property deprivation.[4] He has an

21   adequate post-deprivation remedy under California law and therefore, his attempt to

22   pursue a claim under federal law for the loss of his property fails as a matter of law.

23   Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) 31 F.3d at 816-17, citing Cal.

24   Gov't Code §§810-895.

25   _____

     [3] An authorized deprivation is one carried out pursuant to established state procedures,

26   regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City
     of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). Plaintiff has not alleged, and the facts do not

27   demonstrate, an authorized deprivation.
     [4] The California Department of Corrections and Rehabilitation concedes that Plaintiff's box of

28   legal documents went missing at WSP, and offered him $50 in compensation, which Plaintiff refused.
     (First. Am. Compl., ECF No. 10, at 26-27.)

1  **E.    State Claims**

2    The Court need not address the viability of Plaintiff's state claims because the

3  Court will not exercise supplemental jurisdiction over any state law claim absent a

4  cognizable federal claim.[5] 28 U.S.C. § 1367(a); Herman Family Revocable Trust v.

5  Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001); see also Gini v. Las Vegas Metropolitan

6  Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994). "When . . . the court dismisses the

7  federal claim leaving only state claims for resolution, the court should decline jurisdiction

8  over the state claims and dismiss them without prejudice." Les Shockley Racing v.

9  National Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989).

10  **V.    CONCLUSIONS AND RECOMMENDATION**

11    Plaintiff's First Amended Complaint does not state a claim for relief under § 1983.

12  The prior screening order instructed Plaintiff on the above deficiencies and

13  requirements to correcting them. Plaintiff's ongoing failure to correct these deficiencies

14  reasonably suggests he can not do so. Leave to amend would be futile and should be

15  denied.

16    Accordingly, for the reasons set forth above, it is HEREBY RECOMMENDED

17  that this action be dismissed with prejudice for failure to state a claim.

18    These findings and recommendations will be submitted to the United States

19  District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. §

20  636(b)(l). Within fourteen (14) days after being served with these findings and

21  recommendations, the parties may file written objections with the Court. The document

22  should be captioned "Objections to Magistrate Judge's Findings and

23  Recommendations." A party may respond to another party's objections by filing a

24  response within fourteen (14) days after being served with a copy of that party's

25  objections. The parties are advised that failure to file objections within the specified time

26  may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153

27

28  [5] The Court expresses no opinion on such claims.

9

1  (9th Cir. 1991).

2

3

4  IT IS SO ORDERED.

5  Dated:   February 18, 2014         /s/ *Michael J. Seng*

6                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28